IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION



| | | |
|---|---|---|
| THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, | } } } } | |
| Plaintiff, | } } } | |
| v. | } } } | CASE NO. CV 01-B-1850-NE |
| HUNTSVILLE HEALTH SERVICES, INC. d/b/a Greystone Retirement Community, ASSISTED LIVING CENTERS OF ALABAMA, LLC; LUCILLE DEVERS, individually and by and through her attorney-in-fact and next friend and daughter, JEANNIE HUPFER, | } } } } } } } } } } | |
| Defendants. | } } | |

## MEMORANDUM OPINION

This case is before the court on plaintiff's Motion for Summary Judgment on its Petition to Compel Arbitration; the Motion to Dismiss filed by defendant Huntsville Health Services, Inc., d/b/a Greystone Retirement Community and Assisted Living Centers of Alabama, LLC; and the Motion to Dismiss Petition to Compel Arbitration filed by Lucille Devers. On motion of defendant Devers, the Motion to Dismiss is converted to a Motion for Summary Judgment. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Terminix's motion for summary judgment on its petition to compel arbitration is due to be denied, the motion to dismiss filed by Huntsville Health Services, Inc., and Assisted Living Centers of Alabama, LLC is due to be granted, and Lucille Devers's motion for summary judgment is due to be granted.



## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a Delaware limited partnership with its principal place of business in Tennessee. (Pl.'s Pet. ¶ 1.) None of its general or limited partners are citizens of the State of Alabama within the meaning of 28 U.S.C. § 1332. (*Id.*) Defendant Huntsville Health Services, Inc. ("HHS"), an Alabama corporation with its principal place of business in Alabama, operates an assisted living facility in Huntsville, Alabama, under the name of Greystone Retirement Community ("Greystone"). (*Id.* ¶ 2.) Defendant Assisted Living Centers of Alabama, LLC ("Assisted Living"), an Alabama limited liability company with its principal place of business in Alabama, managed Greystone at all times pertinent to this case. (*Id.* ¶ 3.) Defendant Lucille Devers ("Devers") and her daughter, Jeannie Hupfer ("Hupfer"), are individual citizens and residents of Huntsville, Alabama. (*Id.* ¶ 4.)

On March 10, 1998, HHS/Assisted Living and Terminix entered a written commercial pest control agreement ("the Agreement") in which Terminix agreed to perform monthly services to control specified pests. (*Id.* ¶ 6, Ex. 1.) Terminix provided pest control services for building number three at Greystone until it cancelled the contract on or about September 7, 2000. (Pl. Pet. ¶ 7.) The Agreement contains the following arbitration provision:

> The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this Agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association before three arbitrators appointed by the American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement which may be entered as a judgment by any court of competent jurisdiction. In no event shall

>   either party be liable to the other for indirect, special or consequential damages, loss of anticipated profits or punitive or exemplary damages. This arbitration Agreement and remedy provided shall be the exclusive remedy of the parties who acknowledge that neither of them shall have the right to file any suit, including any action at law or in equity except to enforce any arbitration award granted hereunder.

(*Id.* ¶ 8, Ex. 1.)

On April 26, 1998, Hupfer entered into an assisted living contract with Greystone on behalf of Devers. (Hupfer Aff. ¶ 2.) The contract between Devers and Greystone does not contain an arbitration provision. (*Id.*, Ex. 1.) Before August 20, 1999, and extending through August 24, 1999, Devers resided at Greystone. (Pl.'s Pet., Ex.3 ¶ 8.) According to Devers's Third Amendment to Complaint, beginning August 22, 1999, and continuing through August 24, 1999, fire ants infested Devers's bed and inflicted painful stings and bites on her. (*Id.*, Ex. 3 ¶ 16.)

Devers, individually and by and through her daughter, Hupfer, filed suit against HHS and Assisted Living in the Circuit Court of Madison County, Alabama, for personal injuries. On or about August 24, 2000, HHS and Assisted Living filed a third-party complaint against Terminix alleging that Terminix was liable for Devers's claims against them.[1] (Pl.'s Pet. ¶ 13, Ex. 2.) On or about June 19, 2001, Devers, individually and by and through her daughter, Hupfer, amended her complaint to assert negligence, wantonness, and negligent and/or wanton hiring, retention, training, and supervision claims directly against Terminix. (*Id.* ¶ 15, Ex. 3 ¶¶ 46-55.)

---

[1] On May 31, 2001, HHS and Assisted Living amended their third-party complaint. (Pl.'s Petition ¶ 13, Ex. 2.)

On July 25, 2001, Terminix filed in the United States District Court for the Northern District of Alabama a petition to compel arbitration of any and all claims against it brought by Devers, HHS, and Assisted Living pursuant to Section 4 of the Federal Arbitration Act (the "FAA"). (Pl.'s Pet. at 1, 6.) On August 15, 2001, Devers filed a motion to dismiss the petition. (Devers Mot. Dsm.) On August 31, 2001, HHS and Assisted Living filed in state court a motion to dismiss their third party complaint against Terminix, which was granted, (HHS Memo in Supp. of Mot. Dsm., Ex. A.) On October 18, 2001, Terminix filed a motion for summary judgment. (Pl.'s MSJ.) On November 28, 2001, Devers filed a motion to convert her motion to dismiss into a motion for summary judgment. (Devers MSJ.)

## II. DISCUSSION

Terminix filed this petition to compel arbitration pursuant to Section 4 of the FAA.[2] (Pl.'s Pet. at 1.) Section 2 of the FAA declares that

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has stated that "Section 2 is a congressional declaration of a

---

[2] In pertinent part, Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the matter provided in such agreement."

4

liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

**A. HHS/Assisted Living's claims against Terminix**

No party to this suit disputes the validity of the arbitration provision or denies that its scope extends to the claims HHS/Assisted Living asserted in its third party complaint against Terminix in state court. However, HHS/Assisted Living filed a motion to dismiss these claims and the state court dismissed them. (HHS Memo in Supp. of Mot. Dsm. at 2, Ex. A.) Because there are no presently pending claims between HHS/Assisted Living and Terminix, Terminix's petition to compel HHS/Assisted Living to arbitration is due to be denied as moot.[3]

---

[3] Terminix argues that even if HHS/Assisted Living's claims were dismissed, the court should still compel arbitration as to HHS/Assisted Living because "Terminix still has claims it intends to assert against [HHS/Assisted Living]." (Pl.'s Br. at 13.) This argument is without merit. Unless claims are actually asserted by Terminix against HHS/Assisted Living or *vice versa*, there is no controversy or claim for the parties to resolve in accordance with their arbitration agreement.

**B. Devers's claims against Terminix**

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements. *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). Terminix argues that federal law decides whether the arbitration provision in the contract between Terminix and HHS/Assisted Living applies to claims by Devers against Terminix, (Pl.'s Br. at 10-12), while Devers contends that Alabama law decides the question, (*see* Devers Mot. Dsm. ¶ 13). Both positions have support. *Compare, e.g., Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1074 (5th Cir. 2002) (applying Texas law to determine whether minor children of mobile home buyers who had signed arbitration provision were bound by their parents' agreement to arbitrate) *with, e.g., Wiloughby Roofing & Supply Co., Inc. v. Kajima Int'l, Inc.*, 598 F. Supp. 353, 359 (N.D. Ala. 1984) (concluding that although contracting parties can agree that a certain state's law may govern the resolution of issues submitted to arbitration, federal law governs the categories of claims subject to arbitration and the resolution of issues concerning the arbitration provision's interpretation, construction, validity, revocability, and enforceability).

Although the court is aware of no Eleventh Circuit case deciding whether the applicability of an arbitration provision of a contract to a non-signatory's claims against a signatory is governed by state or federal law, the court notes that the Supreme Court has provided some general guidance on this choice-of-law issue. The court stated:

> We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called "standing" and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned

> by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, see *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983), "save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. See [*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.395, 404, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967)]; *Southland Corp. v. Keating*, 465 U.S. [1], 16-17, n. 11, 104 S. Ct. [852], 861, n. 11, [79 L. Ed. 2d 1 (1984)]. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

*Perry v. Thomas*, 482 U.S. 490, 492 n.9 (1987). However, this court does not reach the choice-of-law issue because an application of either federal law or state law precludes Terminix from compelling arbitration of Devers's claims against it.

*1. Resolution under Alabama state law*

In Alabama, a party cannot generally be compelled to submit to arbitration any dispute unless he has agreed to do so. *Cook's Pest Control, Inc. v. Boykin*, 807 So. 2d 524, 526 (Ala. 2001). Under the Alabama Supreme Court's reasoning in *Boykin*, because Devers is not a signatory to a contract containing an arbitration provision, "there are only two means by which she could be bound to arbitrate her claims": if she is a third party beneficiary to the contract or if her "claims are 'intertwined with' and 'related to' the contract . . . ." *Id.* In *Boykin*, the plaintiff claimed that while she was a patient in the Intensive Care Unit at a hospital, "she was bitten more than 300 times by fire ants." *Id.* at 525. The plaintiff sued the hospital, alleging negligence and wantonness, and subsequently "amended her complaint to name [the pest control

7

provider] as an additional defendant, alleging negligence, wantonness, and, breach of contract, (claiming standing as a third-party beneficiary of the contract between [the pest control provider] and [the hospital])." *Id.* The plaintiff then moved to dismiss the breach of contract claim. *Id.* The trial court granted the motion to dismiss and denied the pest control provider's motion to compel arbitration. *Id.*

The Alabama Supreme Court held that the plaintiff was not a third party beneficiary to the contract. *Id.* at 527. Though noting that generally a party claiming to be a third party beneficiary of a contract must show that the contracting parties intended to confer a direct benefit on the party, the court recognized "that a third party's claims can be so dependent upon a contract that a mere disavowal of third-party-beneficiary status cannot defeat a properly supported motion to compel arbitration." *Id.* at 526-27. The court concluded that "[t]o the extent that [the plaintiff] can prove the prima facie elements of her case against [the pest control provider] without reference to the contract between [the pest control provider and the hospital], she is not bound by the arbitration agreement." *Id.* at 527. Like the plaintiff in *Boykin*, Devers does not claim to be a third party beneficiary and alleges claims of negligence and wantonness against a pest control provider. (Pl.'s Pet., Ex. 3.) Moreover, Devers can prove the elements of her case against Terminix without reference to the contract between Terminix and HHS/Assisted Living. (*See* Watson Aff., Ex. 1.) Therefore, relying on the court's reasoning in *Boykin*, plaintiff is not a third party beneficiary and cannot be compelled to arbitrate her claims against Terminix. *See Boykin*, 807 So. 2d at 527.

Alabama law has also held that a nonsignatory can be compelled to arbitrate if her "claims are 'intertwined with' and 'related to' the contract. *Id.*; *see also SouthTrust Bank v.*

8

*Ford*, No. 1010124, 2002 WL 1003515, *4 (Ala.. May 17, 2002). Noting that the plaintiff "makes substantial allegations of negligence on the part of [the pest control provider] that are independent of any contractual obligations," the *Boykin* court also held that the plaintiff's claims of negligence and wantonness were not subject to arbitration because they were not "intertwined with" and "related to" the contract. *Boykin*, 807 So. 2d at 527. Because Devers alleges negligence claims against Terminix that are independent of Terminix's obligations under its contract with HHS/Assisted Living, Devers's claims are not subject to arbitration. *See id.*

The Supreme Court of Alabama has also held that this "doctrine of estoppel [referring to "intertwined" and "related" claims] is applicable only to estop a *signatory* from avoiding arbitration, and that "a *nonsignatory* cannot be estopped from avoiding arbitration." *Ford*, 2002 WL 1003515 at *4 (emphasis added). The *Ford* court held, "Because arbitration is strictly a matter of contract, this Court has no authority, even under the doctrine of equitable estoppel, to compel parties to arbitrate if they have not agreed to do so." *Id*.

Therefore, under Alabama law, Terminix cannot compel arbitration of Devers's claims based on the arbitration clause in the contract between Terminix and HHS/Assisted Living.

*2. Resolution under Federal Law*

"Notwithstanding the strong federal policy [favoring arbitration], however, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). Although arbitration is a contractual right generally predicated on an express waiver of the right to resolution of a dispute in a judicial forum, the lack of a written arbitration agreement

9

does not always preclude arbitration. *See id.* (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993)). Courts have recognized a number of theories under which non-signatories may be bound to the arbitration agreement of others. *See MS Dealer*, 177 F.3d at 947.

Terminix contends that the doctrine of equitable estoppel compels Devers to arbitrate her claims against Terminix. (Pl.'s Br. at 16.) Equitable estoppel allows a nonsignatory to compel arbitration of a signatory's claims against it in two circumstances. *MS Dealer*, 177 F.3d at 947. "When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement,'" equitable estoppel applies and arbitration is appropriate. *Id.* (citing *Sunkist Soft Drinks*, 10 F.3d at 758). Equitable estoppel also applies when a signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947 (citing *Boyd*, 981 F. Supp. at 1433). Although *MS Dealer* uses the doctrine to compel a signatory to arbitrate its claims against a nonsignatory, Terminix correctly contends that in certain cases, equitable considerations may allow a signatory to a contract containing an arbitration provision to compel arbitration of a nonsignatory. (Pl.'s Br. at 14.)[4]

However, "the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness." *In re Humana Inc. Managed Care Litigation*, 285 F.3d 971, 976 (11th Cir. 2002) (citations and quotations omitted). The court further noted:

---

[4] "There are instances, and cases, where nonsignatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration." *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1534 (M.D. Ala. 1997).

> The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration. The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.

*Id.* (citations and quotations omitted).

Equitable estoppel is not appropriate in this situation. There is no evidence before the court of any misconduct on the part of Devers or concerted action by Devers and either signatory to the contract that would implicate equitable estoppel under the rule enunciated in *MS Dealer*. *See* 177 F.3d at 947. Because Devers's claims against Terminix neither refer to nor presume the existence of the contract between Terminix and HHS/Assisted Living, estoppel is not warranted under *MS Dealer*.[5] *See id.* Generally, estoppel cannot be employed to compel a nonsignatory to arbitrate its claims against a signatory. *See E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3rd Cir. 2001) (refusing to use principle of equitable estoppel to compel a nonsignatory to arbitrate claims against a signatory because nonsignatory "cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists"). *But see International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (holding that under the doctrine of equitable estoppel a party may be estopped from asserting that the lack of

---

[5] Terminix contends that because it would not have performed pest control services at Greystone but for its agreement with HHS/Assisted Living, Devers's claims arise out of the contract and, therefore, are arbitrable. (Terminix Brief at 21-22.) This argument is unpersuasive because Devers can prove a prima facie case without reference to the contract. There is no reason to suppose that an act or omission constituting performance or nonperformance under a contract could not simultaneously constitute the breach of a duty that is not a contractual.

his signature on a written contract containing an arbitration agreement precludes enforcement of the arbitration clause against him when he has consistently maintained that other provisions of the same contract should be enforced to benefit him). Because Devers asserts no right or benefit under the contract between Terminix and HHS/Assisted Living, there are no grounds for estopping Devers from asserting that she did not assent to the contract.

Terminix also contends that it may compel arbitration of Devers's claims against it, because Devers is or seeks to benefit as a third party beneficiary under the agreement between Terminix and HHS/Assisted Living. (Pl.'s Br. at 21-22.) A nonsignatory may compel arbitration against a signatory "when the parties to a contract agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract." *MS Dealer*, 177 F.3d at 947 (quoting *Boyd*, 981 F. Supp. at 1429). The contract between Terminix and HHS/Assisted Living, which purports to "constitute[] the entire agreement between the parties," makes no reference to any third party. (Pl.'s Pet., Ex. 1 at 2.) By its terms, the contract expresses no intention of affording a right of action under the contract to any third party. (*Id.*) There is no evidence that any of the contracting parties agreed to confer benefits on Devers or any other third party. Because Devers can prove the prima facie elements of her claims without reference to the contract, she is not attempting to assert rights under the contract and is not claiming third party beneficiary status.

According to Terminix, the Eleventh Circuit's decisions in *MS Dealer*, *Sunkist Soft Drinks*, and *McBro Planning and Development Company v. Triangle Electrical Construction Company*[6] support compelling Devers to arbitrate her claims against Terminix. (Pl.'s Br. at 16-

---

[6] 741 F.2d 342 (11th Cir. 1984).

19.) However, in these cases the Eleventh Circuit did not compel arbitration of the claims of one who, like Devers, did not sign a contract containing an arbitration provision or otherwise agree to arbitrate any claim. *See MS Dealer*, 177 F.3d at 948 (allowing nonsignatory under the doctrine of equitable estoppel to compel arbitration of claims brought against it by a signatory); *Sunkist Soft Drinks*, 10 F.3d at 758 (allowing nonsignatory, which was a parent company of one signatory under a contract, to compel arbitration of other signatory's claims against it); *McBro*, 741 F.2d at 344 (allowing nonsignatory to compel arbitration of signatory's claims against it where claims were founded in and intertwined with underlying contractual obligations).

Although the FAA embodies a "liberal federal policy favoring arbitration agreements," *MS Dealer*, 177 F.3d at 947 (citation omitted), section 4 of the FAA "does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989) (emphasis in original) (quoting 9 U.S.C. § 4). "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S. Ct. 754, 764 (2002) (quoting *Volt Info.*, 489 U.S. at 478).

Terminix asks the court to compel arbitration of Devers's claims against it. However, in doing so, Terminix asks the court to override the intent of the parties as expressed in the contract. By its terms, the arbitration provision unambiguously limits its scope to claims arising between Terminix and the "Purchaser," HHS/Assisted Living. (Pl.'s Pet., Ex. 1 at 2.)  While ambiguities in contract language should be resolved in favor of arbitration, the court should not

13

"override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 122 S. Ct. at 764. The purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). The court declines Terminix's suggestion that it should ignore the plain language of the contract expressing the intent of the contracting parties and compel the arbitration of Devers's claims. Because arbitration of Devers's claims is inappropriate under both federal law and Alabama case law, Terminix's petition should be denied.

## CONCLUSION

For the reasons stated herein, the court is of the opinion that Terminix's motion for summary judgment on its petition to compel arbitration is due to be denied, HHS/Assisted Living's motion to dismiss is due to be granted, and Devers's motion for summary judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 26th day of September, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge